O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMIYA HOLLIS, | Case No. CV 05-6341 AN |
| Plaintiff, | MEMORANDUM AND ORDER GRANTING MOTION TO AMEND JUDGMENT |
| v. | |
| JO ANNE B. BARNHART, | |
| Defendant. | |

## I. SUMMARY

Pursuant to Fed. R.Civ. P. 59(e) ("Rule 59(e)"), the Commissioner moves to amend or alter the judgment granting a sentence four remand in Plaintiff's favor. [Motion to amend judgment under Rule 59(e) (docket item #20-1) ("Motion").] Plaintiff opposes the Motion. [Reply and Opposition (docket item #22) (collectively referred to as "Opposition").] After considering the parties' contentions and re-examining the record, the Court finds the Motion has merit for the reasons discussed below.

## II. DISCUSSION

A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). *McDowell v. Calderon*, 197 F.3d 1253, 1254 n. 1 (9th Cir.1999) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed.1995)). There are four grounds upon which a Rule

59(e) motion may be granted: (1) the motion is "necessary to correct manifest errors of law or fact upon which the judgment is based; " (2) the moving party presents "newly discovered or previously unavailable evidence;" (3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law." *Id.*

The Commissioner contends the judgment must be amended or altered because the Court made a manifest error of law and fact in concluding the ALJ failed to account for Dr. Mendelsohn's finding that Plaintiff would experience "one or two episodes of decompensation" in making his residual functional capacity assessment ("RFC"). [Motion, 2:6-9.] He primarily contends the ALJ properly accounted for Dr. Mendelsohn's foregoing decompensation assessment, which was subsumed into his more detailed RFC assessment that he completed after finding Plaintiff suffered from a bipolar disorder controlled by medication. [*Id.*, 3:2-13.]

Plaintiff disagrees. She contends that, regardless of how Dr. Mendelsohn's decompensation assessment is characterized, "the fact remains and this court has found that the ALJ did not consider the finding that [Plaintiff] would miss work one or two times a years [sic], with each time lasting two weeks duration as determined by Dr. Mendelsohn." [Opposition, 4:3-6.] She principally argues the Commissioner is wrong for two reasons: (1) Dr. Mendelsohn's decompensation assessment was not subsumed in his detailed mental RFC assessment because it "does not provide any corresponding category for a finding that [Plaintiff's] bipolar [disorder] would cause her to miss work one or two times a year, each time lasting two weeks duration. (Administrative Record ("AR") 130-31)[;]" and (2) the ALJ did not consider the decompensation assessment. [*Id.*, 4:3-18.]

The Court finds the Commissioner is correct, and that Plaintiff's opposing argument lacks merit.

First, the ALJ's decision clearly establishes that the ALJ considered Dr. Mendelsohn's decompensation assessment. [AR 21 (expressly finding that Dr. Mendelsohn "opines that the claimant has had mild limitation except for moderate

impairment in maintaining social functioning and moderate impairment with regard to episodes of decompensation (Exhibit 6F).″]  Consequently, the ALJ did consider the decompensation assessment.

Second, contrary to Plaintiff's repeated assertion, neither Dr. Mendelsohn nor the Court expressly found the duration of each episode of decompensation would cause her to miss work for at least two weeks.  To the extent Plaintiff believes the Court's judgment is based upon such a finding, the judgment is predicated upon a manifest error of fact because there is no substantial evidence in the record showing that Dr. Mendelsohn ever found Plaintiff experienced at least three episodes of decompensation, and that each episode caused her to miss two weeks of work.  The Court finds this aspect of Plaintiff's opposing argument is false, misleading, and is entirely based upon on the definition of "*repeated episodes of decompensation, each of extended duration*" set forth in the Part 12.00(C)(4) of the Listings, which provides, "[t]he term *repeated episodes of decompensation, each of extended duration* in these listing means three episodes within 1 year, or an average of once every 4 months, each lasting for at least two weeks."  20 C.F.R., Part 404, Subpt. P., App. 1 (the Listings), Section 12.00(C)(4).  However, this definition does not apply because Dr. Mendelsohn only found Plaintiff had one or two episodes of decompensation. Although the Psychiatric Review Technique Form ("PRTF") refers to the decompensation factor as "Episodes of Decompensation, Each of Extended Duration," Section 12.00 (C)(4) of the Listings make it clear the latter phrase only applies where there are at least three episodes, that is, "repeated episodes of decompensation."

In this regard, the Court also finds the subject decompensation assessment set forth in Part III of the PRTF is conclusory (AR, 144), and that it is expressly clarified by Dr. Mendelsohn's attached notes,  in which he specifically reports, "[a]lthough [Plaintiff] has had episodes of significant impairment, there is no evidence indicating a 12 month period of inability to perform work-related tasks. *Please see MRFC*." [AR 146 (emphasis added); MRFC refers to the more detailed Mental RFC assessment.]   Further, in his final, more detailed mental RFC assessment,  Dr. Mendelsohn expressly opined that "[Plaintiff]

1 retains the ability to understand, remember and carry out work-related tasks in a work-
2 setting with reduced public + co-worker contact.  There are no significant limitations in
3 the ability to sustain concentration persistence pace or to otherwise adopt to the normal
4 work-place." [AR 130-32.]  Under the circumstances, the Court finds Dr. Mendelsohn's
5 conclusory decompensation assessment merely raised an ambiguity that the ALJ
6 considered together with Dr. Mendelsohn's notes and more detailed mental RFC
7 assessment. [AR 21-23] The ALJ's decision also reflects that he resolved this ambiguity
8 against Plaintiff. [*Id.*].  By doing so, the ALJ did not err since he is solely responsible for
9 resolving ambiguities and "is entitled to draw inferences 'logically flowing from the
10 evidence.'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Macri v. Chater*, 93
11 F.3d 540, 543-544 (9th Cir. 1996).  An ALJ's findings must be upheld where, as here, the
12 evidence is susceptible of more than one rational interpretation. *Andrews*, 53 F.3d at
13 1039-1040. Dr. Mendelsohn's conclusory decompensation assessment, qualifying notes,
14 and more detailed mental RFC assessment collectively and reasonably infer that Plaintiff's
15 one or two episodes of decompensation would not cause her to miss any work but would
16 moderately impair her ability to maintain social functioning, mildly impair her daily
17 activities, and mildly impair her concentration, persistence or pace.  [AR 132, 144, 146.]
18  The ALJ's RFC assessment is consistent with, and supported by, Dr. Mendelsohn's
19 ultimate RFC assessment.  [AR 21.]

### III. CONCLUSION

Based upon the foregoing reasons, the Motion is granted; the Clerk is directed to enter an amended judgment affirming the Commissioner's final decision.

DATED: June 19, 2007

/ s /
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE